IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 09-835 |
| v. | ) ) | Magistrate Judge Bissoon[1] |
| PENNSYLVANIA PUBLIC UTILITY COMMISSION, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I.  MEMORANDUM

For the reasons stated below, Defendants' Motion to Dismiss (Doc. 14) will be denied. The parties are familiar with the facts and legal claims in this case, so the Court will limit its discussions accordingly.

### A.  Exhaustion of Administrative Remedies

Defendants seek dismissal because Plaintiff allegedly failed to exhaust administrative remedies available through the Pennsylvania Public Utility Commission ("the PUC"). *See generally* Defs.' Br. (Doc. 15) at un-numbered pgs. 5-9.  Defendants' citations to legal authority are sparse, and Defendants do not specify the source of the alleged exhaustion requirement.  *See id.*

Under the circumstances, the Court must presume that Defendants seek to invoke "prudential exhaustion."  *See generally* Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007)

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case.  *See* Consent forms (Docs. 20 & 21).

(prudential exhaustion is "[a] judicially created [doctrine], aimed at respecting agency autonomy") (citation omitted).  "Because of its nature, prudential exhaustion can be bypassed under certain circumstances, including waiver, estoppel, tolling or futility," *see id.* (citations omitted), and "the decision of whether to require exhaustion is a matter of sound judicial discretion."  Northern Michigan Hosp., Inc. v. Health Net Fed'l Serv., LLC, 2009 WL 2869149, *5 (3d Cir. Sept. 8, 2009) (citation to quoted, binding authority omitted).

> In exercising its discretion, the Court considers whether:
>
> (1) exhaustion would promote administrative efficiency by preventing premature interference with the agency's processes;
>
> (2) exhaustion would promote executive autonomy by allowing the agency to correct its own errors;
>
> (3) judicial review would be facilitated through enjoyment of the agency's experience and expertise; and
>
> (4) judicial economy would be served by having the agency, rather than the Court, compile a factual record.

*See* Wilson 475 F.3d at 173 (citation to quoted source omitted).

Defendants have failed to convince the Court that these factors require exhaustion. As to (1) and (2), Plaintiff seeks a judicial declaration that an order issued by the PUC in 1973 ("the 1973 order") has been preempted by regulations promulgated under the Federal Railroad Safety Act ("the FRSA") in June, 2008.  *See generally* Am. Compl. (Doc. 3) at ¶¶ 50-59. When this lawsuit was filed, there were no existing "agency processes" with which to interfere. Rather, the PUC, "on its own motion," issued a "[r]econsideration [o]rder" on November 6, 2009 (134 days after the filing of Plaintiff's original Complaint), questioning the continuing validity of the 1973 order.  *See generally* Defs.' Br. at un-numbered pg. 3.

At this juncture, the Court agrees with Plaintiff that its lawsuit has not been shown to "premature[ly] interfere[]" with agency processes. *See* Pl.'s Opp'n Br. (Doc. 17) at 7-8 (arguing that 1973 order was "a final order," whose operation did not require further administrative proceedings). To the contrary, it seems fairly obvious that the PUC invoked its administrative mechanisms in <u>response</u> to Plaintiff's action in federal court, presumably seeking to control the forum and format of the adjudicative process. Efforts to manipulate the scope of federal courts' review are met with suspicion, however,[2] and factors (1) and (2) in <u>Wilson</u> have not been shown to compel exhaustion.[3]

Turning to factors (3) and (4), the Court is unpersuaded that the PUC's experience, expertise and/or fact-gathering capabilities militate in favor of exhaustion. Although Defendants have steered clear of arguments for judicial abstention, there are clear parallels between this case and decisions addressing the doctrine of "primary jurisdiction." *See generally* <u>Boyes v. Shell Oil Prods. Co.</u>, 199 F.3d 1260, 1266 (11th Cir. 2000) (identifying "primary jurisdiction" as doctrine of abstention).

"The doctrine of primary jurisdiction is a flexible tool for the allocation of business between court[s] and agenc[ies that] should seldom be invoked unless a factual question requires both expert consideration and uniformity of resolution." <u>National Tank Truck Carriers, Inc. v. Burke</u>, 608 F.2d 819, 821 (1st Cir. 1979) (citation to quoted source omitted). "[T]he mere fact

---

[2] *Cf. generally* <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 288 (2000) (referencing federal courts' well established "interest in preventing litigants from attempting to manipulate [their] jurisdiction").

[3] Factor (2), which contemplates "allowing the agency to correct its own errors," is inapposite because the PUC made no presumed "error" in issuing its 1973 order. Rather, nearly thirty-seven years after the issuance of the order, questions of preemption have arisen based on federal regulations adopted in 2008. *See generally* discussion *supra* in text. The PUC has not demonstrated special expertise in the area of federal preemption, *see* discussions in text immediately *infra*, and exhaustion currently is not justified under factor (2).

that an administrative agency is prepared to make a determination of an issue within an area of its concern does not itself call for invocation of the doctrine"; rather, in some cases, "harmonious, concurrent exercise of jurisdiction by both the agency and the courts may well be the most efficient and prudent means of proceeding." *Id.* at 821-22 (citations omitted).

Federal courts uniformly have concluded that primary jurisdiction abstention does not apply to cases involving federal preemption. *See, e.g.*, Boyes, 199 F.3d at 1266 ("[a]bstention . . . under the primary jurisdiction doctrine is rarely, if ever, appropriate when federal law preempts state law") (collecting cases); Burke, 608 F.2d at 823 ("the doctrine of primary jurisdiction [does] not bar a judicial determination that a state regulation is preempted by federal law"); *see also* Verizon Wireless (VAW) LLC v. City of Rio Rancho, 476 F. Supp.2d 1325, 1340 (D. N.M. 2007) ("[t]he question of whether a local law is preempted by federal law is within the expertise of courts, not agencies") (citations omitted). Thus, any calls for deference to the PUC's experience, expertise and/or fact-finding capabilities do not warrant dismissal of Plaintiff's claims for failure to exhaust.

These things being said, the Court remains cognizant that certain specific aspects of the preemption issues presented here may well benefit from the PUC's specialized expertise. *See generally* 49 C.F.R. § 213.2 (FRSA regulations preempt state laws, regulations, or orders "covering the same subject matter, except [for] an additional or more stringent law, regulation, or order that is necessary to eliminate or reduce an essentially local safety hazard") (emphasis added). Although the PUC's expertise, to the extent it is relevant and/or useful, has not yet been shown to compel administrative exhaustion, the Court may reconsider its determination at a later stage in these proceedings. *See generally* Lukens Steel Co. v. Donovan, 511 F. Supp. 463, 466 (E.D. Pa. 1981) ("an analysis of whether the [prudential] rule requiring

exhaustion of administrative remedies should be applied <u>is not likely to be thorough if it is attempted at the outset on a motion to dismiss</u>") (citation to quoted source omitted, emphasis added).

### B. Joinder of Necessary Parties

The PUC's 1973 order resulted from a complaint, filed in 1972, by a railroad workers union. *See generally* Defs.' Br. at un-numbered pgs. 1-2.[4] In addition to its 1972 complaint, the Union participated in PUC proceedings in 1995, wherein Plaintiff unsuccessfully requested a modification of the 1973 order. *See id.* at 2. Defendants argue that, given the Union's prior involvement, it is a necessary party to this litigation under Federal Rule of Civil Procedure 19(a). *See id.* at 9-11.

Rule 19(a)(1)(A) states that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if[,] in that person's absence, the court cannot accord complete relief among existing parties." *Id.* As Plaintiff correctly observes, this provision concerns "existing parties," not absent ones, and Defendants have failed to show why complete relief regarding the named parties cannot be accorded. *See* Pl.'s Opp'n Br. at 13-14 and legal authority cited therein.

Rule 19(a)(1)(B) addresses an entity "claim[ing] an interest relating to the subject of the action" that "is so situated that disposing of the action in [the entity's] absence may . . . as a practical matter impair or impede [its] ability to protect the interest." *Id.* The Court has no reason to believe that the Union is unaware of this litigation, however,[5] and the undersigned sees

---

[4] The union, and its successor union, will be referred to collectively as "the Union."
[5] To the contrary, the record strongly suggests that the Union is, or should be, aware of this lawsuit. *See* PUC Hearing Tr. dated Feb. 3, 2010 (filed under Doc. 17-1) at 1 (noting appearance of Union's counsel).

5

no justification for compelling its participation.  *See* <u>Innotex Precision Ltd. v. Horei Image Prods., Inc.,</u> -- F. Supp.2d --, 2009 WL 5174736, *5 (N.D. Ga. Dec .17, 2009) ("[i]f a person knows of the action but chooses not to participate, the court should be reluctant to find that person . . . a required party under Rule 19 based on the possible harm to its interests"; "[t]he [c]ourt [should] not second-guess the [absent party's] assessment of its own interests") (collecting legal authority, citation to quoted sources omitted).

In any event, the movant bears the burdens under Federal Rule 19(a), and Defendants have failed to carry them.  *See generally* <u>Prime Capital Group, Inc. v. Klein</u>, 2008 WL 2945966, *3 (D. N.J. Jul. 29, 2008) (movant bears burdens of showing that absent party is "necessary," joinder is infeasible, and party is indispensable) (citations omitted).

### C.      **<u>Improper Venue</u>**

Finally, Defendants argue that venue is improper in this District because the PUC, its Commissioners, and the administrative proceedings relating to this litigation are located in Harrisburg, Pennsylvania.  *See* Defs.' Br. at un-numbered pgs. 11-13.

Plaintiff responds that venue is proper under 28 U.S.C. § 1391(b)(2), which permits suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, <u>or a substantial part of property that is the subject of the action is situated</u>." *See* Pl.'s Opp'n Br. at 13 (quoting § 1391(b)(2) and supplying emphasis).  Plaintiff asserts that Section 1391(b)(2) applies because:  the 1973 order is not "a regulation of statewide applicability," but was narrowly tailored to apply exclusively to Plaintiff's "Conway Yard," a property located in this District; the PUC's factfinding hearings in support of the 1973 order were conducted in Beaver County, Pennsylvania, also within this District; and "subsequent state proceedings also were conducted within this District."  *See* Pl.'s Opp'n Br. at 12.

6

To be sure, Plaintiff's "property" theory of venue is sufficiently esoteric to invite scholarly intellectual debate; the connections drawn between the 1973 order, Plaintiff's Conway Yard, and Plaintiff's claims of federal preemption, however, have at least some bases in reason and fact. *Compare* Defs.' Br. at n.1 ("there is [no] property that is the subject of this action[; t]he subject . . . is the [PUC's] 1973 [o]rder") (emphasis added) *with* 1973 order (filed under Doc. 15-1) at 2 (referencing "the hearings held in Beaver[, Pennsylvania]"); *see also* Developments in Federal Jurisdiction & Practice:  Personal Jurisdiction, Supplemental (Pendent & Ancillary) Jurisdiction, Venue & Removal, 653 PLI Lit. 7, 89 (Apr. 2001) ("[i]f tangible, or at least identifiable, property is the subject matter of the action -- which would . . . exclude from this criterion [a] naked money action -- proper venue lies in any district in which a 'substantial part' of the property lies," "even if the conduct that made the claim with respect to that property actionable took place elsewhere").

In the end, "[P]laintiff's choice of venue should not be lightly disturbed," and Defendants have failed to demonstrate their entitlement to dismissal.  *See* Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp., -- F. Supp.2d --, 2009 WL 3199692, *1 (W.D. Pa. Sept. 30, 2009) (McVerry, J.) (defendants bear burden on motion to dismiss for improper venue, and court "must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor") (citations omitted).[6]

---

[6] Even were Defendants to establish that venue is improper here, the Court questions the degree to which this ultimately would advance their legal positions.  *See generally* 28 U.S.C. § 1406(a) (upon finding of improper venue, district court may, "in the interest of justice, transfer [the] case to any district or division in which it could have been brought"); *cf. also* Pl.'s Opp'n Br. at 12 (noting that "the PUC maintains an office in Pittsburgh, Pennsylvania").

For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Defendants' Motion to Dismiss (**Doc. 14**) is **DENIED**.

March 24, 2010                                    s\Cathy Bissoon
                                                  Cathy Bissoon
                                                  United States Magistrate Judge

cc (via email):

All Counsel of Record